## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **D&D ASSOCIATES, INC.,** | : | **Civil Action No. 03-1026 (MLC)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | |
| **THE BOARD OF EDUCATION OF NORTH** | : | |
| **PLAINFIELD, VITETTA GROUP, INC.,** | : | |
| **ARCHITECTS, BOVIS LEND LEASE, INC.,** | : | |
| **and ROBERT C. EPSTEIN,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**HUGHES, U.S.M.J.**

_____This matter comes before the Court upon Motion by Defendant Robert Epstein, Esquire, ("Defendant") to preclude Plaintiff D & D Associates' ("Plaintiff") expert report prepared by Anthony Vignuolo, Esquire, identifying deficiencies in Mr. Epstein's performance as the Board's attorney, which Plaintiff claims it reasonably relied upon in submitting its bid for construction projects to the Board. Plaintiff submitted opposition to the Motion, contending that Mr. Vignuolo is qualified to submit an opinion as to Mr. Epstein's performance and that the report satisfies the requirements of Fed. R. Civ. P. 26(a)(2)(B) and F.R.E. 702 and should not therefore be precluded under Fed. R. Civ. P. 37(c)(1) (Def's Br. at 9 -12). The Court considered the submissions of the parties and conducted oral argument on December 19, 2005. For the reasons stated below, Defendant's Motion to preclude Plaintiff's expert report is granted. **I.**_____

**BACKGROUND AND PROCEDURAL HISTORY**

In 2000, the North Plainfield Board of Education ("Board") began the process of securing contracts for the construction and renovation of three schools in North Plainfield, New Jersey

(the "Project").  Mr. Epstein represented the Board on these construction projects.  Plaintiff's bid to become the general contractor on three of these contracts was accepted in July 2001.

Once the project began, Mr. Epstein advised Plaintiff in a letter dated October 11, 2001, that it failed to provide the necessary schedules, and such failure adversely affected the advancement of the project.   In a subsequent letter dated October 19, 2001, Mr. Epstein notified Plaintiff that because of previously cited failures, Plaintiff was in default of the contract.  Mr. Epstein subsequently sent a letter, dated February 25, 2002, to Plaintiff's performance bond surety stating that Plaintiff was in default.  After negotiations with Plaintiff, the Board agreed to withdraw these default notices.

Subsequent to this agreement, the Board advised Plaintiff's performance bond surety, that the Board was prepared to pay Plaintiff's requisitions as long as the surety confirmed that the payments would not impair or affect the Board's rights under the contract.  In a November 20, 2002 letter response to the Board, Plaintiff denied that it had any responsibility for the Project delays.  The parties continued to disagree over the cause of the delays and in a letter dated December 3, 2002, Vitetta Group, the architect on the projects, certified to the Board that Plaintiff was in material breach of its contract due to its failure to provide scheduling information.  Again, Mr. Epstein responded on behalf of the Board by writing two letters to Plaintiff and its performance bond surety.  The letters advised them of the Board's intention to terminate Plaintiff's employment from the Project and that the Board would pay no further requisitions submitted by Plaintiff for the Project.  Negotiations between the parties followed. Ultimately, however, Mr. Epstein advised Plaintiff by letter dated March 4, 2003, that it was terminated from the Project.  Mr. Epstein cited Plaintiff's failure to perform the necessary work

2

according to the previously agreed upon schedule.

Throughout the disagreements outlined above, Plaintiff has maintained that the delays were caused by the Board's inability to properly obtain the necessary permits to begin construction.  Plaintiff claims that the necessary permits were not issued until October 2001, while the various projects were put out to bid in May 2001.  The bid package specified that work would begin "no later than 06/29/01," despite the lack of plan approval.  Plaintiff also claims that Mr. Epstein knew of these shortcomings in the bidding and construction start dates and therefore knew that Plaintiff could not meet the necessary deadlines.   Plaintiff also claims that it notified Mr. Epstein that based on the Board's inability to obtain the necessary permits it could not begin construction and meet the necessary deadlines.  Plaintiff also issued a notice of its intent to seek time extensions and additional costs related to the delays.  (Epstein Certif. at Exhibit 4).

Plaintiff sued Mr. Epstein in his individual capacity asserting claims against him for civil rights violations, toritous interference, libel and slander, and malpractice.

## II.    DISCUSSION

The present dispute arises out of Mr. Epstein's claim that Plaintiff's expert report, prepared by Anthony Vignuolo, Esquire, is deficient because Mr. Vignuolo is not qualified to offer an expert opinion in matters related to school construction law and because the report is an impermissible net opinion.  Plaintiff argues that the report meets all of the standards under F.R.E. 702 and the disclosure standards of Fed. R. Civ. P. 26.   Plaintiff also claims that Mr. Vignuolo is qualified to offer the opinions in the report.  Plaintiff further asserts that Defendant should have inquired into Mr. Vignuolo's qualifications at deposition or letter to Plaintiff's counsel as opposed to resorting to the present motion practice.

**A.      Expert Opinion/Reports - Requirements**

Expert opinions are used to aid the trier of fact in better understanding scientific concepts or concepts that require specific expertise.  The admission of such expert testimony is governed by Federal Rule of Evidence ("F.R.E.") 702.  This rule states that expert opinions are permitted if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness had applied the principles and methods reliably to the facts of the case."   Plaintiff, a party who wishes to use such expert opinion must disclose the identity of any person "who may be used at trial to present evidence under Rule[] 702. . .."  Fed. R. Civ. P. 26(a)(2)(A).  This includes disclosure of an appropriate expert report which includes a "complete statement of all opinions to be expressed and the basis and reason therefor. . . ."  Fed. R. Civ. P. 26(a)(2)(B).  Finally, Fed. R. Civ. P. 37(c)(1) precludes a party from using an expert opinion if it does not comply with the requirements of Fed. R. Civ. P. 26(a).  It states that "[a] party without substantial justification fails to disclose information required by Rule 26(a) . . . , is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

**B.      Mr. Vignuolo's Qualifications**

In order to qualify an expert for trial, the party proffering the expert must demonstrate that the expert has specific knowledge and expertise in the area of law in which he or she wishes to offer the opinion.  Mr. Epstein claims that Mr. Vignuolo is not qualified to offer an expert opinion on whether he committed malpractice in his handling of the contract bidding for Defendant's school projects because Mr. Vignuolo does not have any expertise or experience in

construction or public bidding laws.  Plaintiff counters that Mr. Vignuolo's position as a licensed attorney in the state of New Jersey provides sufficient qualification to offer an expert opinion in a malpractice claim.  Plaintiff also argues that Mr. Vignuolo's resume, which lists school law as a current practice area,  provides additional qualifications to allow him to offer an expert opinion on whether Mr. Epstein's actions rise to the level of malpractice.

Mr. Vignuolo's qualifications and areas of expertise are outlined in his resume.  Under Current Practice Areas Mr Vignuolo lists the following: Business Law; Environmental Law; Complex Civil Litigation; Administrative Law and School Law.  Additionally, he lists his Areas of Expertise as: Real Estate; Wills and Estates; Family Law; Zoning Law; Employment Law; Personal Injury Law and Mass Tort Litigation.  Absent is any expertise or current practice in construction law or with public bidding laws.  The present case involves the care Mr. Epstein took in procuring easements and advising Defendant in preparation for the public bidding of construction projects which were eventually awarded to Plaintiff.  Plaintiff claims that Mr. Epstein mishandled this process and provided inaccurate information regarding Defendant's readiness for the bidding to take place.

As Mr. Vignuolo states, he offered his opinion on the legal services Mr. Epstein rendered to Defendant "in preparation and review of bid documents [and] the review and coordination of the awarding of bids by the Board for the alterations and renovations of five (5) schools in the district."   Thus, Mr. Vignuolo was offering an opinion on Mr. Epstein's advice on the specifics of the entire bidding process.  Therefore, in order for Mr. Vignuolo to provide an expert opinion on whether Mr. Epstein appropriately handled the above matters, he has to possess particular knowledge of the areas of law on which Mr. Epstein provided advice, mainly construction and

public bidding laws.  Mr. Vignuolo's status as a practicing attorney in New Jersey does not offer

this specialized knowledge and neither does his resume suggest that he has expertise in these

areas.   While generalized knowledge of attorney practices might supply the requisite expertise if

the attorney being accused of malpractice had committed general ethical violations for example,

it is insufficient where the malpractice focuses on actions taken by an attorney within a specific

area of law.

Further, F.R.E. 702 requires that expert opinions must assist the trier of fact.  Given that

the expert report relies primarily on the allegations set forth in the Plaintiff's pleadings it does

not offer any legal basis which would assist the trier of fact in determining whether Mr. Epstein

deviated from any recognized duty to the client.  While, Mr. Vignuolo does provide a list of

documents he relied upon to form his expert opinion (*see* Ibrahim Certif. at Schedule "A" ), he

provides little more in his report than the claims plaintiff has already stated in its pleadings.

Finally, admission of expert reports is guided by the standards set forth in  *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993) and

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999).

*Daubert* provided a set of criteria to determine the admissibility of scientific expert testimony

and established the trial judge as the "gatekeepers" for admitting such evidence.  *Kumho Tire*

provided that the trial judges had to maintain leeway in applying the factors set forth in *Daubert*

and should apply such considerations to non-scientific expert testimony as well.  *Kumho Tire,*

119 S.Ct. at 1171, 1176.  In evaluating the permissibility of  non-scientific experts, the court

must determine whether the expert is qualified to provide such an opinion, whether the testimony

assists the fact-finder, whether the testimony is reliable and whether the testimony "fits" the facts

6

of the case.

In the present case, beyond any discussion of qualifications, Plaintiff's expert opinion suffers from a lack of reliability and fit.  As mentioned, Mr. Vignuolo brings no special knowledge of construction law or public bidding laws which inform his expert report finding Mr. Epstein liable for malpractice while providing advice in these areas.  This lack of specified knowledge casts doubt on the reliability of such an opinion.   While experience alone may provide sufficient basis to qualify an expert, the lack of any relevant experience or legal basis supporting a conclusion casts serious doubt on the reliability of the expert's opinion.  (*See Kumho Tire* 119 S.Ct. at 1178 "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

 Furthermore, even if Mr. Vignuolo is qualified to render an opinion in this matter, the opinion offered does not "fit" with the underlying causes of action.  Specifically, if the Court assumes that Mr. Epstein provided poor advice to his client, the Board, it is unclear how this failure to perform a duty owed the client transforms into the causes of action asserted by Plaintiff, mainly civil rights violations, tortious interference, libel and slander and malpractice.  Thus, the opinion offered by Mr. Vignuolo, even if he is deemed qualified to offer it, does not "fit" with Plaintiff's allegations asserted against Mr. Epstein.

In conclusion, Mr. Vignuolo's report will not aid the trier of fact, is not "reliable" as contemplated by the above standards, and does not fit the facts of the case.  For these reasons alone, the report should be excluded.  However, the report also proves inadequate based on the fact that it offers no more than an impermissible net opinion.

## C.      Impermissible Net Opinions

Mr. Epstein also claims that Mr. Vignuolo's report provides an impermissible net opinion.  Plaintiff argues that the report meets the standards set forth by New Jersey Courts in malpractice cases.  For an expert report to be permissible the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion.  *Dawson v. Bunker Hill Plaza Associates*, 289 N.J. Super. 309, 323 (App. Div.), *certif. denied* 146 N.J. 569 (1996)(citing *Vuccolo v. Diamond Shamrock Chemical Co.*, 240 N.J. Super. 289, 292 (App. Div), *certif. denied* 122 N.J. 333 (1990)).  Thus, a causal connection must be established between the "wrongful act" and the resulting injury.  *Vitrano v. Schiffman*, 305 N.J. Super. 572, 577 (App. Div. 1997).  As mentioned above, Mr. Vignuolo does little more than reiterate the allegations set forth in Plaintiff's pleadings.  While he does list the documents reviewed, he provides nothing further in way of matching the relevant facts with the alleged injury.

Plaintiff argues that the following opinion, included in Mr. Vignuolo's report, provides sufficient causal connection to establish the  report as more than mere net opinion:

> The rendering of an opinion that a notice to proceed could issue without allowing the contractor the legal authority to act, resulted in the foreseeable reliance by D&D and the resulting damages caused proximately by this deviation from accepted standards within the profession.  The conduct of Mr. Epstein's office in connection with the failure to obtain easements necessary for construction work produced a similar result.  The reliance by D&D on the access necessary to commence construction within the time frame set forth in the contract documents was equally foreseeable.  D&D's inability to meet the construction schedule by reason of the lack of access to the site produced damages which proximately flowed from this additional deviation from accepted standards within the legal profession.

Plaintiff claims the above establishes the deficiencies in Mr. Epstein's actions and thus sufficiently provides the necessary causal connection between those actions and Plaintiff's loss of

the contract.  Plaintiff asserts that it could not complete the needed construction on the established time frame once the delays, due to the lack of building permits, occurred.  However, these again are the same allegations that Plaintiff put forth in its pleadings.  Mr. Vignuolo provides no specific expertise in this area which would aid the trier of fact in determining whether such delays were Mr. Epstein's responsibility, whether Mr. Epstein had a duty to alert Plaintiff of the delays in obtaining the permits, or whether the delays caused Plaintiff to default and ultimately lose the contract for the Project.

Finally,  Mr. Vignuolo's report is woefully deficient on establishing damages. Specifically, Mr. Vignuolo states that: "[w]hile I have not reviewed or analyzed the extent of damages sustained by D&D as the result of the conduct of the Epstein office, it is self-evident that delays which accrued to D&D by reason of its inability to obtain construction permits and access to the site, produced damages which proximately flow from the deviation of the standard of are by Mr. Epstein."  It is important to note that not only does Mr. Epstein confirm that he has not been able to establish damages, he claims that such damages are self-evident.  As mentioned above, the expert report must provide a causal connection between the act and the damages.  This clearly does not.  In addition, an expert report or expert testimony must assist the trier of fact. Claiming that the damages are self-evident does nothing to achieve this end.  Finally, an opinion must be based on the necessary and relevant facts, which by his own admission, Mr. Vignuolo's report is not.  Thus, the opinion becomes no more than mere net opinion not established by the necessary facts and not providing the necessary causal connection between the alleged wrongful act and the damages which resulted.

### III.    CONCLUSION

In conclusion, the Court finds that due to the insufficiency of the Vignuolo Report offered by Plaintiff, based on Mr. Vignuolo's lack of qualification to render an opinion as to the advice rendered by Mr. Epstein in the construction and public bidding of the Project and on the net opinion offered in the report, it must be excluded from consideration in this case as it fails to meet the requirements set forth in Fed. R. Civ. P. 26(a)(2)(B) and F.R.E. 702.  In addition, acting as gatekeeper pursuant to *Daubert*, the Court finds that the "reliability" and "fit" of the expert opinion is sufficiently deficient so as to preclude its use in this case.

An appropriate order accompanies this Memorandum Opinion.

January 10, 2006

 /s/ *John J. Hughes*                                      
**JOHN J. HUGHES**
**UNITED STATES MAGISTRATE JUDGE**

10