<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|                                    |   |                                   |
|------------------------------------|---|-----------------------------------|
| D&D ASSOCIATES, INC.,              | : | CIVIL ACTION NO. 03-1026 (MLC)    |
|                                    | : |                                   |
|     Plaintiff, | : | **MEMORANDUM OPINION**            |
|                                    | : |                                   |
|     v.         | : |                                   |
|                                    | : |                                   |
| THE BOARD OF EDUCATION OF          | : |                                   |
| NORTH PLAINFIELD, et al.,          | : |                                   |
|                                    | : |                                   |
|     Defendants. | : |                                   |

<u>**COOPER, District Judge**</u>

This matter comes before the Court on the appeal by D&D Associates, Inc. ("D&D") from an order of the Magistrate Judge entered on January 10, 2006. For the reasons stated herein, the Court will affirm the order of the Magistrate Judge.

<u>**BACKGROUND**</u>

**I.  Facts**

The parties are familiar with the background of this action. (<u>See</u> 9-30-05 Mem.Op. & Ord.; 1-10-06 Mem.Op. & Ord.) Plaintiff, D&D, was the general construction contractor for various school construction and renovation projects in North Plainfield, New Jersey. (<u>Id.</u>) The construction projects were delayed, and defendant the Board of Education of North Plainfield ("the Board") issued a notice of default to D&D. (<u>Id.</u>) The Board also terminated D&D from the project. (<u>Id.</u>)

D&D brought this action on March 10, 2003, (1) alleging that the Board, and its attorney Robert C. Epstein ("Epstein"), among others, violated D&D's civil rights and breached a contract with D&D, and (2) asserting claims for tortious interference, libel, slander, conversion, and fraudulent inducement.  (Am. Compl.) Discovery is ongoing and set to conclude on March 30, 2006. (Dkt. entry no. 121.)  Among other discovery motions, Epstein filed a motion to preclude the expert report of Anthony B. Vignuolo ("Vignuolo") submitted on behalf of D&D.  The Magistrate Judge granted Epstein's motion to preclude the admission of the expert report on January 10, 2006.  (Dkt. entry nos. 107, 108.) The appeal of that order is now before this Court.

## II.  The Motion to Preclude

Epstein moved to preclude Vignuolo's expert report on November 22, 2005.  (Dkt. entry no. 95.)  As articulated by Vignuolo in the report, D&D "asked [him] to render an opinion as to whether the defendant, Robert Epstein, Esq., committed legal malpractice with regard to his representation of the North Plainfield Board of Education specifically in connection with . . . the preparation and review of bid documents."  (Vignuolo Report, at 1.)  Vignuolo concluded, "Mr. Epstein's advice should have been to delay the award of the contracts and/or the issuance of a notice to proceed," and because Epstein "failed to advise the Board against awarding the contracts and/or withholding the

2

notice to proceed . . . his conduct deviates from the accepted standards within the legal profession." (<u>Id.</u> at 4.)

Epstein argued that the report should be precluded because (1) Vignuolo is not qualified to render the opinion, and (2) the report is an inadmissible net opinion. (Epstein Br. in Supp. of Mot. to Preclude, at 5, 9.) D&D argued that the report should not be precluded because (1) Vignuolo is qualified to render the opinion, (2) discovery is not complete and it would premature to preclude the report at this time, and (3) the report satisfies the standards set out under New Jersey law for expert opinions in malpractice cases. (D&D Br. in Opp'n to Mot. to Preclude, at 8-9, 15.)

### III. The Magistrate Judge's Opinion and Order

The Magistrate Judge, applying Federal Rule of Evidence ("FRE") 702, and the standard for the admissibility of expert evidence set forth by the Supreme Court in <u>Daubert</u>, granted Epstein's motion to preclude Vignuolo's report. The Magistrate Judge recognized that Vignuolo was asked to provide an opinion on the specifics of the entire contract bidding process. (1-10-06 Mem.Op., at 5.) The Magistrate Judge determined that Vignuolo was not qualified to render such an opinion because he did not possess specialized knowledge or expertise in construction and public bidding law. (<u>Id.</u> at 5-6.) The lack of specialized knowledge also cast doubt on the reliability of the report. (<u>Id.</u>

3

at 7.)  Beyond the qualifications of the expert himself, the
Magistrate Judge also determined that Vignuolo's opinion that
Epstein provided bad advice to his client, the Board, did not
"fit" the underlying causes of action asserted by D&D for civil
rights violations, tortious interference, libel, and slander.
(Id.)  Finally, the Magistrate Judge noted that the report only
reiterates the plaintiff's allegations, and fails to establish
damages.  (Id. at 8-9.)

## DISCUSSION

## I.   District Court Review of Magistrate Judge Decisions

The district court has authority to review determinations of
a magistrate judge.  See 28 U.S.C. § 636.  A magistrate judge is
accorded wide discretion in addressing non-dispositive motions,
and an exercise of discretion will be reversed only if there is
an abuse of that discretion.  Id.; Miller v. Beneficial Mgmt.
Corp., 844 F.Supp. 990, 997 (D.N.J. 1993).  A district judge may
not reverse, modify, or vacate a magistrate judge's order
addressing a non-dispositive motion unless the order is "clearly
erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A);
Fed.R.Civ.P. 72(a); L.Civ.R. 72.1(c)(1); Cipollone v. Liggett
Group, Inc., 785 F.2d 1108, 1113 (3d Cir. 1986).  "A finding is
clearly erroneous when although there is evidence to support it,
the reviewing court on the entire evidence is left with the
definite and firm conviction that a mistake has been committed."

4

Thomas v. Ford Motor Co., 137 F.Supp.2d 575, 579 (D.N.J. 2001)
(internal quotes and cites omitted).  Any evidence that was not
presented to the magistrate judge cannot be considered by the
district court when making a factual determination.  Id. at 579.

## II.  Admissibility of Expert Reports

Federal Rule of Civil Procedure 26 requires parties to
disclose the identity of any person who may provide expert
testimony at trial.  Fed.R.Civ.P. 26(a)(2)(A)-(B).  Each expert
must submit a written report regarding the opinions that would be
rendered.  Id.  The trial judge acts as a gatekeeper and has
discretion to determine when an expert report is admissible.
Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Yarchak
v. Trek Bicycle Corp., 208 F.Supp.2d 470, 494 (D.N.J. 2002).

To be admissible, expert testimony must be both relevant and
reliable.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589
(1993) (setting out standard for the admissibility of expert
scientific evidence); Kumho Tire Co., 526 U.S. at 141 (holding
that the Daubert standard applies to all technical and
specialized expert opinions not just scientific expert evidence
and opinions).  There is no exclusive or definitive list of
factors to be considered.  Kumho Tire Co., 526 U.S. at 141-42.
FRE 702 sets out the standard for the admissibility of expert
testimony.  It provides:

> [i]f scientific, technical, or other specialized
> knowledge will assist the trier of fact . . . a witness

5

> qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto . . . if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The restrictions on the admissibility of expert testimony embody three concerns: (1) qualification, (2) reliability, and (3) fit. Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). An expert must have specialized knowledge and be qualified to speak with authority on a particular matter. Id.; Yarchak, 208 F.Supp.2d at 494. The specialized knowledge requirement is interpreted liberally. Kumho Tire Co., 526 U.S. at 152. There is not an overly rigorous requirement for specialized knowledge, but the inquiry is not merely a formality. Schepise v. Saturn Corp., No. 94-385, 1997 WL 897676 at, *12 (D.N.J. July 30, 1997). There is a floor with respect to minimum qualifications for expert witnesses. Elcock, 233 F.3d at 742; Schepise, No. 94-385, 1997 WL 897676, at *12.

The inquiry into an expert's qualifications must be fact specific and governed by the unique circumstances in each case. Schepise, No 94-385, 1997 WL 897676, at *12 (determining that a medical doctor was qualified to provide an opinion on medical diagnosis of a patient, but not qualified to provide an opinion on the behavior of a particular chemical causing an illness because she had no experience with polymer chemistry). An

expert's knowledge may be drawn from academic training and credentials, or personal and practical experience.  Elcock, 233 F.3d at 741; see also Kumho Tire Co., 526 U.S. at 152.

The court must be certain that the expert possesses the "level of intellectual rigor that characterizes the practice of an expert in the relevant field," and "at a minimum . . . possess[es] skill or knowledge greater than the average layman." Kumho Tire Co., 526 U.S. at 152; Elcock, 233 F.3d at 741.  If an expert's area of experience "is adjacent to, but not actually encompassing, the subject matter of his testimony, he may be deemed unqualified."  Player v. Motiva Enter., LLC, No. 02-3216, 2006 WL 166452, at *5 (D.N.J. Jan. 20, 2006) (finding expert who was experienced in appraising uncontaminated properties was not qualified to provide an opinion on the value of contaminated properties); see also Surace v. Caterpillar Inc., 111 F.3d 1039, 1056 (3d Cir. 1997) (finding electrical engineer not qualified to provide an expert opinion on the phenomenon of habituation because he had no training or experience in such an area); Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 114 (3d Cir. 1987) (finding that tractor salesperson was not qualified to give expert testimony on the cause of a tractor fire); Montefiore v. Am. Prot. Ins. Co., No. 00-3235, 2003 WL 21108232, at *2 (S.D.N.Y. May, 14, 2003) (finding that expert was not qualified

to give opinion on building deterioration even though he had 50 years experience in the construction and masonry industry).

An expert's opinion must also possess certain indicia of reliability.  Daubert set out various factors to evaluate the reliability of scientific expert reports including, whether methods used by the expert consist of a testable hypothesis, whether the methods have been subject to peer review, and the known or potential rate of error.  Daubert, 509 U.S. at 592-94. These factors may not be helpful or applicable to non-scientific expert testimony, but the test of reliability is flexible.  Kumho Tire extended the Daubert "relevant and reliable" standard to all expert opinions.  Kumho Tire Co., 526 U.S. at 141.  As with expert qualifications, the court has broad discretion to decide (1) the factors to be considered when determining reliability, and (2) the ultimate determination as to reliability.  Kumho Tire Co., 526 U.S. at 142.

An expert opinion is reliable when it is based on sound methodology and "good grounds."  Yarchak, 208 F.Supp.2d at 494. The court must evaluate an expert opinion on the reasonableness of the methodology used, not based on the conclusions it draws. Id. at 495.  Nothing, however, "requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."  Kumho Tire Co., 526 U.S. at 157; Yarchak, 208 F.Supp.2d at 495.  There must be a "relevant

8

connection between the scientific research or test result to be presented and particular disputed factual issues in the case." Yarchak, 208 F.Supp.2d at 494 (internal quotes and cites omitted).  Mere assumptions without causal evidence may be inadmissible.  Player, No. 02-3216, 2006 WL 166452, at *7.

## III. Preclusion of the Vignuolo Report

The Magistrate Judge's order precluding Vignuolo's report was not clearly erroneous.  The Magistrate Judge determined that (1) Vignuolo was not qualified to an offer an opinion on the matter at issue, (2) there was no fit between the offered opinion and the claims alleged, and (3) the opinion reiterated the complaint and did not address damages.  (1-10-06 Mem.Op.)

### A. Vignuolo's Qualifications

Vignuolo has been an attorney in the state of New Jersey for over thirty years.  (Mot. to Preclude Def. Ex. A.)  His resume lists various areas of current practice and experience including administrative law, school law, and real estate and zoning law. (Id.)  It lists several previous and present clients, including the Milltown Board of Education, Middlesex County Educational Services Commission, and the North Brunswick Township Board of Education.  (Id.)  The resume, however, does not elaborate on the scope or subject matter of Vignuolo's representation of those clients.

9

The Magistrate Judge determined that in order to offer an opinion in the present action, expertise in the area of construction and public bidding laws was required.  (1-10-06 Mem.Op., at 5-6.)  Vignuolo's resume does not reflect the requisite expertise and the Magistrate Judge deemed Vignuolo not qualified to provide his opinion.  (Id. at 6.)  As recognized by the Magistrate Judge, Vignuolo may be qualified to offer a general opinion as to attorney malpractice and ethics, but the dispute in this action involves the more specific context of public bidding law.

To be qualified to offer an expert opinion, Vignuolo must possess specialized knowledge.  This Court acknowledges that the qualification requirement has been interpreted liberally.  The specific circumstances of this case will govern the Court's analysis.  Vignuolo's resume reflects an absence of particularized knowledge in public bidding and construction law.  The Magistrate Judge's decision to preclude the report, therefore was not clearly erroneous.

D&D's Supplemental Certification ("the certification") does not remedy the Magistrate Judge's concern that Vignuolo lacks specialized knowledge to offer an opinion relating to attorney malpractice in the context of public bidding law.  Vignuolo names several school boards as clients in the certification.  Vignuolo, however, does not state that he himself represented these

10

clients, but rather states that "my office has acted as counsel . . . " to the named clients. (Vignuolo Certif., at ¶¶ 2,3.) It is unclear, therefore, what role Vignuolo himself actually played regarding the representation of the school board clients. Vignuolo is providing the expert opinion. He must demonstrate that he possesses the necessary expertise. His office's collective expertise or representation of school boards is not sufficient. The specific substantive nature of the work performed by Vignuolo and the law and procedures at issue in prior school board representations are also unclear.

Vignuolo does state that he himself has been "involved in" 50 bidding projects, and the construction of several school buildings. (Vignuolo Certif., at ¶¶ 4,5.) While he also asserts that all of these representations related to school law bidding processes, there is no elaboration on the degree and level of his involvement, Vignuolo's familiarity with the particulars of the process, or whether the prior bidding projects' procedures are at all similar or analogous to the Board in this action. The Magistrate Judge determined that Vignuolo did not possess the necessary specialized knowledge to offer an opinion in this action. The certification does not provide enough details of Vignuolo's specialized knowledge for the Court here to determine that the result reached by the Magistrate Judge was clearly erroneous.

**B. Reliability and Fit of Vignuolo's Report**

Vignuolo's qualification or lack thereof aside, Vignuolo's report was properly precluded because the Magistrate Judge's determination that the report did not fit the underlying cause of action was not clearly erroneous.  D&D asserts claims against Epstein for (1) violations of the First, Fourth, Fifth, and Fourteenth Amendments, (2) violations of D&D's liberty interest, (3) intimidation of witnesses, (4) illegal garnishment, (5) breach of the duty of care, (6) fraudulent inducement, (7) conspiracy, and (8) various torts including tortious interference, libel, and slander.  (Am. Compl.)  Vignuolo's opinion provides a recommendation as to what Epstein's advice to the Board should have been, and concludes that Epstein's failure to provide such advice deviated from accepted legal standards. (Mot. to Preclude Ex A.)

The report does not "fit" because the claims alleged do not implicate the advice or quality of the legal services provided by Epstein to the Board.  The complaint alleges that Epstein breached a duty of care owed to D&D, but Vignuolo's report addresses how Epstein should have advised the Board.  The report is not an opinion on Epstein's professional obligations to D&D. The Court acknowledges that the propriety of Epstein's continued representation of the Board, is an issue in a separate action pending before this Court.  (N. Plainfield Bd. of Educ. v. Zurich

12

Am. Ins. Co., No. 05-4398 (MLC))  The causes of action in the present case, however, do not deal with the attorney-client relationship of Epstein and the Board, and therefore there is a disconnect between the opinion offered by Vignuolo and the factual circumstances of the present case.

Vignuolo's opinion as to damages also does not provide the requisite "fit" between the report and the facts.  Vignuolo indicates in his report that he has not reviewed D&D's damages, but that it is "self-evident" that D&D's damages result from Epstein's conduct.  (Vignuolo Report.)  Vignuolo's opinion as to damages, therefore, is connected only by the ipse dixit of Vignuolo himself, and does not possess the requisite fit to be admissible in this action.

The Magistrate Judge expressed concern that Vignuolo's opinion only reiterated the facts alleged in the complaint without establishing a causal connection between the alleged wrongful acts and the resulting injury.  (1-10-06 Mem.Op., at 8.) On appeal, the parties dispute this point by arguing whether Vignuolo's opinion is an impermissible net opinion.  (Epstein Br., at 14; D&D Br., at 16.)  The net opinion rule bars the admission of expert testimony when it is not based on a proper factual foundation, or is mere speculation.  Winnicki v. Bennigan's, No. 01-3357, 2006 WL 319298, at *15 (D.N.J. Feb. 9, 2006.)  The Court will not address the net opinion rule, but the

13

Magistrate Judge's recognition that the Vignuolo opinion merely reiterates the complaint is not clearly erroneous.[1]

Vignuolo opines that Epstein allowed the Board to issue a notice to proceed to D&D, knowing that the necessary permits could not be obtained.  (Vignuolo Report.)  This statement, however, only summarizes several of the allegations of the complaint, allegations that were denied by the defendants.  For example, the complaint alleges "Epstein and the Board knew at the time . . . that the Board had unlawfully issued contracts without permits, without funding, and without complete easement and other ownership rights in the land needed for construction."  (Am. Compl., at 10.)  The report does not connect allegations, such as this one, to the result.  It reiterates the allegation and concludes that by allowing D&D to proceed with the construction project, Epstein deviated from professional standards and damaged D&D.  The report explains neither the bid process in relation to Epstein's actions, nor why his actions deviated from professional standards.  The complaint also alleges, and the report addresses (1) reliance by D&D based on the Epstein's actions and (2) the resulting damages to D&D.  (See Am. Compl., at 44; Vignuolo Report at 3-4.)  The opinion does not place the reliance in the

---

[1] See Winnicki, No. 01-3357, 2006 WL 319298, at *15 (declining to address the net opinion rule, noting that the net opinion rule is established under New Jersey law and "is not a federal evidentiary rule and does not form a part of the Daubert/Kumho analysis").

context of the bid process; it only repeats D&D's reliance as alleged in the complaint.  With respect to damages, Vignuolo acknowledges in the opinion that he has not reviewed the extent of D&D's damages.

In deciding this motion to preclude the Magistrate Judge was vested with discretion.  "[A]s is so often the case in discretionary rulings involving qualification of witnesses . . . we will affirm a reasoned decision . . . regardless of how we might have decided the issue if we had been making the original determination."  Waldork v. Shuta, 142 F.3d 601, 627 (3d Cir. 1998).  The Magistrate Judge's opinion and order here were reasoned and not clearly erroneous.  This Court, therefore, is not inclined to reverse the Magistrate Judge's decision to preclude Vignuolo's report.

<u>CONCLUSION</u>

The Court, for the reasons stated <u>supra</u>, will affirm the January 10, 2006, order of the Magistrate Judge.  An appropriate order will be issued.

s/ Mary L. Cooper<br>
**MARY L. COOPER**<br>
United States District Judge